UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JAMES D. DIONNE and DAWN KNAPP,
individually, and as representatives of a Class
of Participants and Beneficiaries
of the Froedtert Health, Inc. 403(b) Plan,

             Plaintiff,

      v.

FROEDTERT THEDACARE HEALTH, INC.,
FROEDTERT HEALTH, INC., BOARD OF
DIRECTORS OF FROEDTERT THEDACARE
HEALTH, INC., and FROEDTERT HEALTH
RETIREMENT PLAN SUBCOMMITTEE,

             Defendants.

Case No. 2:26-cv-1078

**CLASS ACTION COMPLAINT FOR
CLAIMS UNDER 29 U.S.C. § 1132(a)(2)**

## COMPLAINT

Plaintiffs James D. Dionne and Dawn Knapp ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of the Froedtert Health, Inc. 403(b) Plan ("Plan" or "Froedtert Plan"), by their counsel, WALCHESKE & LUZI, LLC, allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### I.      INTRODUCTION

1.      Plaintiffs bring this action under 29 U.S.C. § 1132(a)(2) on behalf of the Plan and the Plan's participants and beneficiaries against Defendants Froedtert ThedaCare Health, Inc. ("Froedtert ThedaCare"); Froedtert Health, Inc. ("Froedtert"), the Board of Directors of Froedtert ThedaCare Health, Inc ("Board"), and the Froedtert Health Retirement Plan Subcommittee ("Plan Committee") (collectively, "Defendants," "Froedtert," or "Froedtert Defendants") for breach of fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA").

1

2. The Froedtert Defendants are all fiduciaries to the Froedtert Plan.

3. During the Class Period (June 16, 2020, to the present), Defendants utilized the Froedtert' Plan's forfeitures, a type of plan asset, to benefit themselves by reducing their future employer matching contributions to the Plan, violating ERISA's fiduciary duties of loyalty and prudence.

4. Plan forfeitures should have been used to also pay Plan administrative expenses instead of exclusively making employer matching contributions and by failing to do so, Defendants breached their duties of loyalty and prudence to Plan participants.

5. More specifically, and as set forth in more detail below, Plaintiffs allege that Defendants: (a) improperly utilized forfeited Plan assets exclusively to disloyally reduce future employer matching contributions which favored the employer's financial interests over participants' interests; (b) did not engage in any prudent process when deciding to use Plan forfeitures for the employer's own benefit rather than to reduce Plan expenses; and (c) failed to monitor those responsible on the Plan Committee for allocation of Plan forfeitures.

6. The Plan itself identified expense payment as the first available use of forfeitures, yet nobody ever analyzed whether that option should be used.

7. Plaintiffs' forfeiture claims are brought on behalf of the Plan and seek equitable remedies for losses suffered by the Plan under 29 U.S.C. §§ 1132(a)(2) and 409(a).

8. Plaintiffs suffered concrete injuries to their Plan accounts because they paid Plan administrative expenses that could have been reduced or eliminated had forfeitures been allocated differently. Those injuries are fairly traceable to Defendants disloyally and imprudently using Plan forfeitures for their own benefit to reduce their future contributions to the Froedtert Plan, and these injuries diminished the savings in Plaintiffs' retirement accounts.

9. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C.

2

§ 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

10. Plaintiffs do not have actual knowledge of the specifics of the Froedtert Defendants' decision-making processes with respect to the Plan, including the Froedtert Defendants' processes for allocating Plan forfeitures, because this information is solely within the possession of the Froedtert Defendants prior to discovery. For purposes of this Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth herein.

## II. PARTIES

### A. Plaintiffs

11. Plaintiff James D. Dionne brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Dionne is a participant, as defined in 29 U.S.C. § 1002(7), in the Froedtert Plan during the Class Period. Plaintiff Dionne suffered individual injury by not having his Plan expenses covered in part or in whole by Plan forfeitures.

12. Plaintiff Dawn Knapp brings this suit in a representative capacity on behalf of the Plan and its participants and beneficiaries pursuant to 29 U.S.C. § 1132(a), seeking appropriate Plan-wide relief under 29 U.S.C § 1109 to protect the interests of the Plan. Plaintiff Knapp is a participant, as defined in 29 U.S.C. § 1002(7), in the Froedtert Plan during the Class Period. Plaintiff Knapp suffered individual injury by not having her Plan expenses covered in part or in whole by Plan forfeitures.

### B. Defendants

13. Defendant Froedtert Health, Inc. ("Froedtert Health") is a Wisconsin nonstock corporation that, during a portion of the Class Period, sponsored and/or administered the Froedtert Plan. Froedtert

3

Health is headquartered at 9200 West Wisconsin Avenue, Milwaukee, Wisconsin 53226, and operates hospitals, clinics, physician practices, and related healthcare facilities throughout Wisconsin.

14. Effective January 1, 2024, Froedtert Health combined with ThedaCare, Inc. to form Froedtert ThedaCare Health, Inc. ("Froedtert ThedaCare"), an integrated healthcare system serving communities throughout Wisconsin.

15. Defendant Froedtert ThedaCare Health, Inc. is a Wisconsin nonstock corporation headquartered at 9200 West Wisconsin Avenue, Milwaukee, Wisconsin 53226. Froedtert ThedaCare operates hospitals, physician practices, outpatient facilities, and other healthcare services throughout Wisconsin and employs more than 13,000 individuals.

16. Froedtert ThedaCare succeeded to the rights, responsibilities, obligations, and liabilities of Froedtert Health relating to the Plan and assumed responsibility for the ongoing sponsorship, administration, and management of the Plan following the combination of Froedtert Health and ThedaCare.

17. At all relevant times, Froedtert Health and/or Froedtert ThedaCare acted as the Plan Sponsor, Plan Administrator, appointing fiduciary, and named fiduciary with respect to the Plan, either directly or through their officers, committees (including the Froedtert Health Retirement Plan Subcommittee), employees, and agents.

18. To the extent any fiduciary breaches alleged herein occurred prior to January 1, 2024, Froedtert Health is liable for those breaches. To the extent any fiduciary breaches occurred on or after January 1, 2024, Froedtert ThedaCare is liable for those breaches. In addition, because Froedtert ThedaCare is the successor to Froedtert Health with respect to the Plan, it is also liable for appropriate equitable and remedial relief under ERISA, including restoration of losses to the Plan resulting from fiduciary breaches occurring during the Class Period.

4

19. As required by 29 U.S. C. § 1102(a)(1), the Plan has been established and maintained by written plan documents during the Class Period, including the Froedtert Health, Inc. Volume Submitter 403(b) Plan Adoption Agreement of August 8, 2018 (restated most recently on December 18, 2024) ("403(b) Adoption Agreement"),[1] attached as **Exhibit 1**, applicable from the beginning of the Class Period to the present.

20. Since at least August 8, 2018, and mostly restated again on December 18, 2024), under Section 8-6(f) of the 403(b) Adoption Agreement (entitled "Allocation of Forfeitures"), since at least the beginning of the Class Period, "[p]rior to applying the forfeitures under subsection . . . (c) [relating to use of forfeitures to reduce employer matching contributions], [f]orfeitures may be used to pay Plan expenses." Ex. 1 at 37.

21. Similar and more specific language appears in the Froedtert Plan's Summary Plan Descriptions ("SPDs"), attached as Exhibit 2, for the entire Class Period: "**Treatment of Forfeited Benefits.** If any of your benefits are forfeited, those forfeited amounts *may be first use to pay any Plan expenses*. If any forfeitures remain after paying Plan expenses, such forfeited amounts will be used to offset other Employer Contributions under the Plan for the Plan Year in which the forfeiture occurs." Ex. 2 at 15.

22. Froedtert chose Lincoln Financial ("LF") to provide Plan administrative and recordkeeping services during the Class Period.

23. Froedtert caused the Plan and its participants to pay Plan administrative fees to LF during the Class Period.

24. Consequently, Plan participants paid Plan administrative fees because LF was paid direct compensation from the Plan as disclosed on Form 5500 Schedule Cs from 2020 to 2024. Moreover, the

---

[1] The 403(b) Plan adopted by the Froedtert Defendants during the Class Period consists of the Volume Submitter 403(b) Plan Basic Plan Document #08 ("BPD") and the elections made under the 403(b) Plan Adoption Agreement.

5

Plan participant fee disclosures indicate that there are Plan administrative fees that are deducted from Plan participant accounts.

25. The Board is responsible for appointing and monitoring individuals responsible for administering and managing the Froedtert Plan. All of these individuals serve at the pleasure of the Board.

26. The Plan Committee functions as the administration committee for the Froedtert 403(b) plan. It was responsible during the Class Period to determine in what manner to allocate Plan forfeitures.

27. Current and former members of the Plan Committee, as well as those employees who have been appointed to manage and operate the Froedtert Plan, are fiduciaries of the Froedtert Plan under 29 U.S.C. § 1002(21)(A) because they exercise discretionary authority and/or discretionary control respecting management of the Plan.

### III.     JURISDICTION, VENUE, AND STANDING

28. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2).

29. This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject Plan is administered and where at least one of the alleged breaches took place. It is also the District in which the Froedtert Defendants reside.

### IV.     ERISA'S FIDUCIARY STANDARDS

**A.     Overview of ERISA's Fiduciary Duties of Loyalty and Prudence**

30. ERISA exists, in large part, to protect the interests of participants, and their beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

31.     "[A]ny person who exercises discretionary authority or control in the management or administration of an ERISA plan" is, under the statute's terms, a fiduciary. *See Barchock v. CVS Health Corp.,* 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

32.     ERISA imposes strict duties of loyalty and prudence upon fiduciaries of retirement plans, like the Froedtert Plan, that are covered by ERISA.

33.     ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

34.     ERISA's fiduciary duties are "the highest known to the law." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (en banc) (internal quotation marks omitted).

35.     The inquiry into the duties of loyalty and prudence is "context specific." *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022).

36.     Defendants failed to fulfill their duty to loyally and prudently control the manner in which forfeitures were utilized by the Plan.

**B.     Fiduciary Liability Under ERISA**

37.     Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to *such plan* any losses to the plan resulting from each such breach, and to restore to *such plan* any profits of such fiduciary which have been made through use of assets of the plan by fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

38.     29 U.S.C. § 1132(a)(2) is the enforcement mechanism of 29 U.S.C. § 1109. It enables participants and beneficiaries to bring civil actions to seek appropriate relief under 29 U.S.C. § 1109.

## C.     Co-Fiduciary Liability

39.     ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

i.     he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

ii.     by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

iii.     he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## V.     THE PLAN

40.     The Froedtert Plan is a defined contribution plan described in Section 403(b) of the Internal Revenue Code, I.R.C. § 403(b) (1986) (hereinafter denoted as "the Code"), and is subject to the provisions of ERISA.

41.     During the Class Period, the Plan provided for retirement income for approximately to 20,000 Froedtert employees, former employees, and their beneficiaries (the "Plan participants").

42.     As of December 31, 2024, Plan participants had invested over $2.1 billion in the 403(b) Plan.

43.     The Froedtert Plan is funded by a combination of wage withholdings by Plan participants and Company contributions, each of which is deposited into the Plan's trust fund.

8

44. In accordance with 29 U.S.C. § 1103(a), the assets of the Froedtert Plan are held in a trust fund. Upon their deposit into the Plan's trust fund, all participant contributions and Froedtert contributions become ***assets of the Plan***.

45. The fiduciary duties of prudence and loyalty under ERISA, are violated where, as here, the employer (1) is both the plan sponsor and plan administrator; (2) is faced with a conflict of interest in choosing between allocating plan assets toward offsetting its own contributions to the Plan or defraying plan expenses that would otherwise be borne by Plan participants; (3) fails to conduct any investigation as to which choice would be in the best interest of the participants; and (4) decides to allocate all those plan assets toward reducing its own plan contributions because that choice best serves its own interests.

46. Forfeitures are the nonvested portion of a participant's account that is lost upon termination of employment.

47. The Froedtert Plan gave the Plan Committee a discretionary choice about how to use the forfeitures each year, but also instituted a priority for certain uses being considered first.

48. Under the terms of the Froedtert Plan, Plan forfeitures of the non-vested portion of terminated employees' accounts ***may first be used*** to pay Plan expenses, and then, if any forfeitures remained after paying Plan expenses, such forfeited amounts may be used to offset other Employer Contributions under the Plan for the Plan Year in which the forfeiture occurs. Ex. 1 at 37.

49. The use of the word "may" imbues this Plan language with discretion and the word "first" means that the Plan Committee should have considered using the Plan forfeitures to pay eligible Plan expenses first, before using those forfeitures to reduce employer contributions. So, when the time came to actually exercise the discretion provided by the Plan, to determine whether forfeitures would first be allocated toward Plan administrative expenses or thereafter, toward reducing Froedtert's contributions, those decisions were made in a fiduciary capacity.

9

50. Unless Defendants choose to allocate the forfeitures to pay Plan expenses, the Plans' administrative expenses are charged to the Plan participants' accounts. Both Plaintiffs paid administrative expenses out of their Plan accounts because Froedtert discretionarily decided to exclusively reduce future company contributions rather than first reduce or eliminate any Plan expenses on their behalf as expressly permitted under the Plan during the Class Period.

51. Although the Plan itself identified expense payment as the first available use of forfeitures, it is reasonable to infer that nobody on the Plan Committee ever analyzed whether that option should be used, as evidenced based on how forfeitures were exclusively allocated toward employer contributions during the Class Period.

## VI.   DEFENDANTS' FORFEITURE ALLOCATION PROCESS

52. The Plan expressly recognized that forfeitures could be used to pay Plan expenses *before* being applied to reduce employer contribution obligations. Ex. 1 at 37. Despite that express recognition, Defendants never evaluated whether Plan expenses should be paid with forfeitures and instead consistently used forfeitures to reduce employer contribution obligations while participants continued to bear Plan expenses through deductions from their individual accounts.

53. The governing Plan documents specifically identified the payment of Plan expenses as the *first* permissible use of forfeitures. Defendants nevertheless consistently selected the alternative that reduced Froedtert's corporate costs while participants continued to incur Plan expenses, further supporting the inference that Defendants prioritized Froedtert's interests over the interests of Plan participants.

54. In addition, because the Plan and SPD both establish a sequence under which forfeitures are first available to pay Plan expenses before being applied to reduce employer contribution obligations, Ex. 1 to 37; Ex. 2 at 15, Defendants failed to administer the Plan in accordance with its governing documents in violation of ERISA § 404(a)(1)(D) by systematically

10

bypassing the expense-payment option and applying forfeitures directly to reduce employer contributions.

55. The deduction of the Plan's administrative expenses from the participants' accounts reduces the funds available to participants for distribution and/or investing, and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

56. Froedtert consistently exercised its discretion regarding Plan forfeitures between June 15, 2020 and the present, by exclusively using forfeitures to reduce employer contributions rather than pay Plan expenses, even though the Plan not only permitted forfeitures to be used for either purpose, but instructed that the Plan Committee should *first* consider using forfeitures for Plan expenses.

57. The Audited Financials to the Froedtert 5500 forms from 2020-2024 state how Plan forfeitures were used and for what purpose. Audited Financial Statement footnotes (attached to Plan 5500 Forms), and signed by an independent third-party auditor, also provide current forfeiture year-end balance and previous year end balance for the Froedtert Plan.

58. The Audited Financials to the Froedtert Plan 5500 Forms from 2020 states: "Forfeitures result when participants terminate employment prior to fully vesting in their account. The unvested contributions and related earnings will be forfeited at the earlier of the date of distribution or after a period of five consecutive years of separation from the Employer. During the years ended December 31, 2020 and 2019, forfeitures of $1,125,828 and $2,320,036 were used to reduce the Employer's nonelective contributions funded in 2020 and 2019 which related to the years ended December 31, 2019 and 2018, respectively. Forfeitures as of December 31, 2020 and 2019 were $1,226,839 and $957,165, respectively."

59. The Audited Financials to the Froedtert Plan 5500 Forms from 2021 state: "Forfeitures result when participants terminate employment prior to fully vesting in their account. The unvested contributions and related earnings will be forfeited at the earlier of the date of distribution or after a

11

period of five consecutive years of separation from the Employer. During the year ended December 31, 2021, forfeitures of $1,481,777 were used to reduce the Employer's nonelective contributions funded in 2021. Forfeitures as of December 31, 2021 and 2020 were $1,533,730, and $1,226,839, respectively."

60. The Audited Financials to the Froedtert Plan 5500 Forms from 2022 state: "Forfeitures result when participants terminate employment prior to fully vesting in their account. The unvested contributions and related earnings will be forfeited at the earlier of the date of distribution or after a period of five consecutive years of separation from the Employer. During the year ended December 31, 2022, forfeitures of $1,863,802 were used to reduce the Employer's nonelective contributions funded in 2022. Forfeitures as of December 31, 2022 and 2021 were $1,387,879, and $1,533,730, respectively."

61. The Audited Financials to the Froedtert Plan 5500 Forms from 2023 state: "Forfeitures result when participants terminate employment prior to fully vesting in their account. The unvested contributions and related earnings will be forfeited at the earlier of the date of distribution or after a period of five consecutive years of separation from the Employer. During the year ended December 31, 2023, forfeitures of $1,615,011 were used to reduce the Employer's nonelective contributions funded in 2023. Forfeitures as of December 31, 2023 and 2022 were $1,682,472, and $1,387,879, respectively."

62. The Audited Financials to the Froedtert Plan 5500 Forms from 2024 state: "Forfeitures result when participants terminate employment prior to fully vesting in their account. The unvested contributions and related earnings will be forfeited at the earlier of the date of distribution or after a period of five consecutive years of separation from the Employer. During the year ended December 31, 2024, forfeitures of $1,737,675 were used to reduce the Employer's nonelective contributions

12

funded in 2024. Forfeitures as of December 31, 2024 and 2023 were $2,434,770 and $1,682,472, respectively."

63. Based on these forfeiture numbers from the 2020 through 2024, where the language concerning the payment of Plan expenses do not appear, it is possible to infer that **all** of the Plan forfeitures were used to reduce future employer matching contributions.

64. The following chart shows Froedtert Plan use of forfeiture allocations through June 30, 2026:

### Failure to Pay Plan Expenses

| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 (YTD) |
|---|---|---|---|---|---|---|---|
| Forfeitures Used to Reduce Employer Contributions | $1,125,828 | $1,481,777 | $1,863,802 | $1,615,011 | $1,737,675 | $1,737,675 | $724,031 |
| Forfeitures Used to Pay Plan Expenses | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Forfeitures Allocated to Participants | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Total Forfeitures Disclosed Being Used | $1,125,828 | $1,481,777 | $1,863,802 | $1,615,011 | $1,737,675 | $1,737,675 | $724,031 |
| Total Direct Compensation | $818,902 | $1,135,271 | $1,322,904 | $1,450,969 | $1,131,064 | $1,131,064 | $471,277 |
| Plan Expenses that should have been paid with Forfeitures | $818,902 | $1,135,271 | $1,322,904 | $1,450,969 | $1,131,064 | $1,131,064 | $471,277 |
| Cumulative Losses | $439,739 | $1,575,010 | $2,897,914 | $4,348,883 | $5,479,947 | $6,611,011 | $7,082,288 |
| Compounding Percentage (Plan Return) | | 15.30% | -15.81% | 16.66% | 12.99% | 12.15% | 5.55% |
| Potential Cumulative Compounded Losses | $439,739 | $1,642,311 | $2,705,611 | $4,607,390 | $6,336,940 | $8,238,117 | $9,166,838 |

**Note:** Losses for 2020 are pro-rated for 196 days of the year based on 6/17/2020 start date of the class period. 2025 and 2026 YTD plan return is estimated by calculating the average difference between the investable returns of the S&P 500 (we use VIIIX as an investable proxy which provides returns net of fees) from 2014 through 2024 and subtracting that difference from the return of VIIIX in 2025 and 2026 YTD respectively.

65. Using the forfeitures to reduce future employer contributions is usually, but not always, in the best interest of Froedtert because that option decreases its own contribution costs and means that Froedtert does not need to take money out of its own general revenues to pay for Plan contributions.

66. The option to reduce future employer contributions is not always in Froedtert' best interest and in limited circumstances, fiduciaries could potentially conclude that there is a risk that Froedtert may be financially unable to satisfy its contribution obligations.

13

67. Absent a risk that Froedtert would be unable to satisfy its contribution obligations under the Froedtert Plan, however, using forfeitures to pay Plan expenses would be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such administrative expenses.

68. Here, there existed no reason why Froedtert could not satisfy its contribution obligations without Plan forfeitures.

69. Plaintiffs do not allege that ERISA invariably requires forfeitures to be used to pay Plan expenses rather than offset employer contributions. Rather, Plaintiffs allege that Defendants failed to undertake a prudent and loyal fiduciary process before repeatedly choosing the option that benefitted Froedtert financially while participants continued to bear Plan expenses.

70. In using Plan forfeitures solely to reduce its own employer contributions from 2020-2024, and possibly through present, even though it was permitted to use those Plan forfeitures to pay administrative expenses for Plan participants, Froedtert consistently selected the option that reduced corporate contribution obligations.

71. The Plan sponsor, acting in a settlor capacity, merely established a menu of permissible uses for forfeitures and set a priority among those uses. Once the Plan granted fiduciaries discretion to choose among those alternatives in administering Plan assets, the actual allocation decision became subject to ERISA's fiduciary duties of loyalty and prudence.

72. A plan fiduciary that exercises discretion to use forfeited plan assets to defray plan expenses is not providing a benefit greater than what was required or intended by the plan sponsor/employer (settlor).

73. Rather, plans that grant discretion to plan fiduciaries to choose among multiple different options for allocating forfeited plan assets, including to defray plan expenses, necessarily contemplate that plan expenses will be defrayed if doing so accords with ERISA's fiduciary standards.

14

74. A plan fiduciary making fiduciary decisions based on the discretion granted by the plan sponsor/employer is explicitly prohibited by ERISA from considering the interest of the employer.

75. There is no dispute that under the terms of the Plan, defraying plan expenses was an allowable use of Plan forfeitures.

76. Accordingly, from the beginning of the Class Period through present, a prudent fiduciary as part of a prudent fiduciary process would have always considered **first** whether using Plan forfeitures to defray Plan expenses was more consistent with their duties under the plan and ERISA than using Plan forfeitures to offset Company contributions.

77. ERISA's fiduciary duty of prudence is violated where, as here, Froedtert failed to conduct any investigation as to which choice would be in the best interest of the participants.

78. If Froedtert had employed a prudent process from the beginning of the Class Period, Froedtert would have used the Plan forfeitures to defray some or all Plan expenses.

79. In other words, Froedtert imprudently coordinated with the Plan's recordkeeper, LF, to calculate how much of the Plan forfeitures would be used to offset Froedtert' employer contributions, while allowing Plan expenses to be deducted from the accounts of Plan participants, like Plaintiffs.

80. Because Froedtert always had the ability to defray Plan expenses with Plan forfeitures from the beginning of the Class Period through the present, but never did so, it is reasonable to infer that Froedtert employed a flawed decision-making process or did not employ any process at all to determine how to allocate Plan forfeitures during this time period.

81. *First*, Plaintiffs are unaware of any facts suggesting that using Plan forfeitures to offset employer contributions was necessary to maintaining those contribution levels, as there are no facts or circumstances to suggest that Froedtert' process in determining the amount of its Plan contributions is based on any consideration of the amount of Plan forfeitures.

82. In fact, just like all other companies that have discretionary contribution provisions, from the beginning of the Class Period through present, Froedtert' decisions related to employer contributions were made without reference to the amount of Plan forfeitures and were instead driven by the need to attract and retain talented employees.

83. Companies like Froedtert actually use their past benefit history to both attract new employees and promote to their existing employees the benefits provided by the plan design even if those benefits are discretionary.

84. On the other hand, Plan administrative expenses are immaterial to both Froedtert's decision to provide a discretionary employer contribution, as well as to Froedtert's financial results.

85. *Second*, upon information and belief, Defendants did not conduct an analysis to show that they would be unable to meet its future Plan contribution obligations, such that using Plan forfeitures to offset employer contributions was necessary from the beginning of the Class Period through present.

86. Upon information and belief, Froedtert was able to meet its future contributions from the beginning of the Class Period through the present, and would have been able to meet its declared employer contributions each year, even if no Plan forfeitures were applied to offset its contributions.

87. Instead of acting prudently by using Plan forfeitures to defray Plan expenses charged to the individual accounts of Plan participants on an ongoing basis, Froedtert chose to use all the Plan forfeitures for the exclusive purpose of offsetting its employer contributions to the Plan, thereby reducing Froedtert's contribution obligations while participants continued to incur Plan expense deductions.

88. Defendants should have used the fiduciary discretion granted to it to first pay Plan expenses of Plan participants. Defendants' contrary fiduciary decision with regard to the Froedtert

16

Plan forfeitures cost the Plans' participants more than $9 million dollars, excluding lost investment growth, from June 15, 2020 to the present.

89. Froedtert received a benefit while participants simply received that which they would have received anyway, while remaining on the hook for paying their share of the Plans' administrative expenses.

90. While Froedtert' decisions to use the Plan's forfeitures to reduce its outstanding and unpaid contributions benefitted itself by lowering its costs, it harmed the Plan, along with its participants and beneficiaries, by reducing the amount of assets the Plan otherwise would have received and by causing deductions from participants' accounts to cover expenses that otherwise would have been covered in whole or in part by the Plan's forfeitures.

## VII.  CLASS ACTION ALLEGATIONS

91. In acting in their representative capacity for the Froedtert Plan, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Froedtert Plan. Plaintiffs seek to certify, and to be appointed as representatives of, the following Class:

> All participants and beneficiaries of the Froedtert Health, Inc. 403(b) Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning June 16, 2020, and running through the date of Judgment.

92. The Class includes approximately 20,000 employees and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

93. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Froedtert Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

    a.    Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

17

b. What are the losses to the Plan resulting from each breach of fiduciary duty; and

c. What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of fiduciary duty.

94. Plaintiffs' claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants of the Froedtert Plan during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct with regard to forfeiture allocation.

95. Plaintiffs will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plans during the Class period, have no interests that conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and competent lawyers to represent the Class.

96. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

97. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Forfeiture Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

18

98.     Plaintiffs' counsel will fairly and adequately represent the interests of the class and is best able to represent the interests of the Class under Rule 23(g).

## CAUSES OF ACTION

## <u>COUNT I</u>

**Breach of the Duty of Loyalty**
**Misallocation of Plan's Forfeitures**
**(Against Plan Committee)**

99.     Plaintiffs restate the above allegations as if fully set forth herein.

100.     Defendants are fiduciaries of the Froedtert Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

101.     Pursuant to 29 U.S.C. § 1104(a)(1)(A), Froedtert was required to discharge its duties to the Froedtert Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

102.     Froedtert has continually breached this duty of loyalty with respect to their control and management of the Froedtert Plan's assets throughout the Class Period by choosing to utilize forfeited funds in the Plan for the exclusive benefit of Froedtert rather than solely in the interest of the Plan's participants and beneficiaries.

103.     Defendants faced a conflict between: (a) using forfeitures to reduce expenses borne by participants; and (b) using forfeitures to reduce employer contribution obligations. Defendants consistently selected the latter course.

104.     Instead of acting solely in the interest of the Plan's participants by utilizing forfeited funds in the Plan to reduce or eliminate Plan expenses, Froedtert chose to use the Plan's assets to exclusively reduce Froedtert' contribution obligations, thereby saving Froedtert millions of dollars at the expense of

19

the Plan and its participants, who were forced to incur avoidable Plan expense deductions to their individual accounts.

105.    In making these Plan forfeiture decisions, Froedtert was motivated primarily or exclusively by its own self-interest rather than the interests of the Plan's participants and beneficiaries, in violation of ERISA's fiduciary duty of loyalty.

106.    As a direct and proximate result of Froedtert' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

## COUNT II

**Breach of the Duty of Prudence**
**Misallocation of Plan's Forfeitures**
**(Against Plan Committee)**

107.    Plaintiffs restate the above allegations as if fully set forth herein.

108.    Pursuant to 29 U.S.C. § 1104(a)(1)(B), Froedtert was required to discharge its duties with respect to the Froedtert Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

109.    Froedtert has continuously breached its duty of prudence under 29 U.S.C. § 1104(a)(1)(B) throughout the Class Period by declining to use the forfeited funds in the Plan to eliminate or reduce the Plan expenses charged to participant accounts, and instead used the Plan's forfeitures to reduce Froedtert' contributions to the Plan.

110.    In deciding how to allocate forfeitures, Froedtert utilized an imprudent and flawed process. Despite the conflict of interest presented by their forfeitures allocation decisions, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited

20

funds in the Plan to reduce the Company's own contributions, as opposed to the Plan expenses charged to participant accounts, was prudent, and failed to consider whether participants would be better served by another use of these forfeiture assets after considering all relevant factors.

111. It is reasonable to infer that Defendants failed to conduct any investigation, analysis, comparison, review, or deliberation concerning whether forfeitures should be used to pay Plan expenses.

112. By refusing to use forfeited funds in the Plan to first eliminate or reduce the Plan expenses charged to participant accounts, and instead deciding to use the Plan's forfeitures to reduce Froedtert' own contributions to the Plan, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan's assets and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the forfeited funds to pay Plan expenses, as discretionarily permitted under the Plan.

113. As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

## COUNT III

**Failure to Follow Plan Documents**
**Misallocation of Plan's Forfeitures**
**(Against Plan Committee)**

114. Plaintiffs restate the above allegations as if fully set forth herein.

115. Fiduciary provisions under ERISA require "a fiduciary [to] discharge his duties with respect to a plan solely in the interest of participants and beneficiaries and—. . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

116. The Plan Committee violated its fiduciary duties during the class period, by failing to first considering using forfeitures to pay any Plan administrative expenses as contrary to the allocation

21

sequence and discretionary framework established by the Plan in Section 8.6 of the 403(b) Plan Adoption Agreement and in the applicable SPDs. Instead, the Plan Committee used Plan forfeitures solely to reduce Froedtert's own matching contributions during the Class Period.

117. There is no valid reason that the forfeited amounts could not have been used to pay Plan expenses, as Plaintiffs and other class members paid various Plan expenses during the Class Period.

118. Defendants use of Plan forfeitures was inconsistent with the Plan document and, therefore, amounted to a fiduciary breach pursuant to 29 U.S.C. § 1104(a)(1)(D).

119. As a direct and proximate result of Defendants Plan Committee's fiduciary breaches, the Plan suffered injury and loss for which Defendant Plan Committee is personally liable and is subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of prudence.

120. The Plan Committee knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## COUNT IV

### Failure to Adequately Monitor Other Fiduciaries
### Misallocation of Plan's Forfeitures
### (Against Froedtert, Froedtert ThedaCare, and Board)

121. Plaintiffs restate the above allegations as if fully set forth herein.

122. Under the Plan document, Defendants Froedtert Health and Froedtert ThedaCare, through its Board of Directors, has the authority to appoint and remove Plan Committee members. These Defendants knew or should have known that these fiduciaries had critical responsibilities for the Plan.

123. In light of this authority, Defendants Froedtert ThedaCare, Froedtert Health, and Board, had a fiduciary duty to monitor those individuals responsible for the allocation of Plan forfeitures on the Plan Committee to ensure that they were adequately performing their fiduciary obligations, and to take

22

prompt and effective action to protect the Froedtert Plan in the event that these individuals were not fulfilling those duties.

124. Defendants Froedtert ThedaCare, Froedtert Health, and Board, had a duty to ensure that the individuals responsible for allocating Plan forfeitures possessed the needed qualifications and experience to carry out their duties (or use qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the allocation of Froedtert Plan's forfeitures; and reported regularly to Defendants Froedtert ThedaCare, Froedtert Health, and their Board.

125. The objectively disloyal, imprudent, and conflicted manner in which Defendant Plan Committee allocated Plan forfeitures inferentially establish that Defendants Froedtert ThedaCare, Froedtert Health, and Board breached their duty to monitor by, among other things:

(a) Failing to monitor and evaluate the performance of individuals responsible for allocation of Plan forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the Plan misallocated Plan forfeiture for Froedtert's own benefit;

(b) Failing to monitor the process by which the Plan Committee investigated the use of Plan forfeitures; and

(c) Failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures solely for the benefit of Froedtert.

126. As the consequences of the breaches of the duty to monitor allocation of Plan forfeitures, the Plaintiffs and Plan participants suffered millions of dollars of objectively unreasonable and unnecessary monetary losses.

127. Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendants Froedtert ThedaCare, Froedtert Health, and Board, are liable to restore to the Froedtert Plan all losses caused by their failure to adequately monitor individuals responsible for allocation of Plan forfeitures on the Plan Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

23

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the Froedtert 403(b) Plan, and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

i. find and adjudge that the Froedtert Defendants have breached their fiduciary duties, as described above;

ii. find and adjudge that the Froedtert Defendants are personally liable to make good to the Plan any losses to the Plan resulting from each breach of fiduciary duty to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii. order the Froedtert Defendants to make good to the Plan the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach of fiduciary duty;

iv. find and adjudge that the Froedtert Defendants are liable to the Plan for appropriate Plan-wide equitable relief, including but not limited to restitution and disgorgement;

v. determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be calculated;

vi. order the Froedtert Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a);

vii. remove the fiduciaries who have breached their fiduciary duties;

viii. impose surcharge against the Froedtert Defendants and in favor of the Plan all amounts involved in, and all Plan losses arising from, any transactions or fiduciary breaches that were in violation of ERISA;

ix. reform the Plan to include only prudent forfeiture allocation methods;

x. certify the Class, appoint the Plaintiffs as class representatives, and appoint

24

Walcheske & Luzi, LLC, as Class Counsel;

xi.    award to the Plaintiffs and the Class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine; and order the Froedtert Defendants to pay interest to the extent allowed by law; and

xii.    grant such other equitable or remedial relief as the Court deems appropriate.

Respectfully submitted,

Date: June 16, 2026                          **WALCHESKE & LUZI, LLC**

Paul M. Secunda (WI Bar 1044127)
1100 N. Mayfair Rd., Suite 270
Wauwatosa, Wisconsin 53226
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*

25